**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Andrew Plummer, | ) | C/A No. 2:15-cv-00016-TLW-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Warden Tim Riley, IGC Ms. Powe, | ) | |
| DHO Glidewell, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, filed the instant action on January 5, 2015, pursuant to 42 U.S.C. § 1983. (Dkt. No. 1)  On June 9, 2015, the Plaintiff moved to amend the Complaint. (Dkt. No. 20.)  This court granted the Plaintiff's motion, and the Amended Complaint was filed on February 4, 2016.  (Dkt. No. 62.)  This matter is before the court on the Defendants' Motion For Summary Judgment (Dkt. No. 76) and the Plaintiff's Motion for Summary Judgment. (Dkt. No. 77.)  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 79.)  The Plaintiff and the Defendants each responded to the other's respective motion for summary judgment (Dkt. Nos. 88 & 85) and each side replied to the other's response (Dkt. Nos. 91 & 89).   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.  For the reasons stated herein, this court recommends that the Defendants' Motion

For Summary Judgment (Dkt. No. 76) be granted and the Plaintiff's Motion for Summary Judgment (Dkt. No. 77) be denied.

## Factual Background

At all times relevant to the Amended Complaint, the Plaintiff was incarcerated at Tyger River Correction Institution ("Tyger River"). On January 23, 2013, the Plaintiff was charged with Offense 832: Unauthorized Inmate Organization Activity or Participation in a Security Threat Group or STG Activity. (Dkt. No. 76-2 at 2.) On February 11, 2013, the Plaintiff was convicted of the charge at a disciplinary hearing and sanctioned with 360 days of disciplinary detention, 540 days of loss of canteen, 540 days of loss of visitation, and 60 days loss of good time credit. (*Id.*) The Plaintiff appealed his conviction through the grievance process up to the Administrative Law Court ("ALC"). (*Id.*) Once pending before the ALC, officials at the South Carolina Department of Corrections decided to reverse the Plaintiff's conviction and grant the Plaintiff a rehearing. (*Id.* at 19-20.) On December 20, 2013, the ALC remanded the Plaintiff's case for a rehearing. (Dkt. No. 77-2.)

On December 20, 2013, the Plaintiff's second disciplinary hearing was held. (Dkt. No. 62.) The disciplinary hearing officer was Defendant Glidewell. (Dkt. No. 62.) The Plaintiff alleges that Defendant Glidewell repeatedly cut off the recording of the hearing and later erased a portion of the recording of the hearing. (Dkt. No. 1.) The Plaintiff was found guilty at the second disciplinary hearing and was sanctioned with 360 days of disciplinary detention, 180 days loss of canteen, 180 days loss of visitation, 180 days loss of telephone, and 60 days loss of good time credit. (*Id.*)

The Plaintiff appealed his second conviction on December 20, 2013, the same day as the hearing. (Dkt. No. 62) The Plaintiff filed his grievance with Defendant Powe, who in turn

forwarded the grievance on to Defendant Warden Tim Riley. (*Id.*)  The Plaintiff alleges that Defendants Powe and Riley violated his due process rights by failing to "fully investigate" the recording of his second disciplinary hearing. (*Id.* at 2.)  On September 9, 2014, the Plaintiff received a response to his Step 2 grievance reversing his conviction and lifting all sanctions imposed. (Dkt. Nos. 1 & 77-2 at 11.)  The conviction was reversed because the recording of the hearing was not complete. (Dkt. No. 85-1 at 4.)

The Plaintiff alleges that his good time credits were never restored. (Dkt. No. 1 at 2.) Defendant Riley stated in his supplemental affidavit that no good time credits were restored because no good time credits were ever deducted. (Dkt. No. 85-1 at 4.)  The Plaintiff alleges that due to his conviction he was classified in a more strict level of detention resulting in separation from the general population and being kept on lock down 23 hours a day. (Dkt. No. 1.)  As a result he was in a cell with a leaky window and toilet. (*Id.*)  Additionally the Plaintiff was not allowed as much toilet paper as the general population, was not allowed to shower as often as the general population, and was not allowed more than one religious book. (*Id.*) Defendant Riley stated in his supplemental affidavit that the Plaintiff's classification and housing at the time in question had no bearing on the charge that was reversed. (Dkt. No. 85-1 at 4.)  Rather, his classification and housing was the result of his numerous other disciplinary convictions. (Dkt. No. 85-1 at 2-4.) The Plaintiff seeks damages for his disciplinary detention served from January 23, 2013 through September 9, 2014.[1] (Dkt. No. 91.)

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment

---

[1] The Plaintiff states that he seeks damages through September 9, 2013. (Dkt. No. 91.)  This date has no apparent significance in this case.  However, September 9, 2014, was the day his conviction and sanctions were overturned. (Dkt. No. 77-2 at 11.)  Therefore, the court construes "September 9, 2013" as a scrivener's error.

"shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  The Fourth Circuit has held that *pro se* pleadings "must" be held to "less stringent standards than pleadings drafted by attorneys and must [be] read ... liberally." *White v. White*, 886 F.2d 721, 722-23 (4th Cir.1989).

## Analysis

The Plaintiff claims under 42 U.S.C. § 1983 that his Fourteenth Amendment right to due process of law was violated by the Defendants in their individual capacities. (Dkt. No. 62.) In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color

of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The Defendants argue that summary judgment is appropriate in the case at bar because the allegations set forth in Plaintiff's Complaint do not give rise to a constitutional violation; the Plaintiff has no cognizable claim concerning the conditions of his confinement; the Plaintiff's allegations concerning his classification do not give rise to a constitutional deprivation; the Plaintiff has failed to set forth a cognizable claim of conspiracy against the defendants; there is no liability on behalf of the defendants based on the doctrine of supervisory liability; the defendants cannot be held liable under the doctrine of *respondeat superior*; even if a disputed issue of material fact exists in regards to plaintiff's constitutional claims, the defendants are entitled to qualified immunity; to the extent plaintiff requests declaratory relief, his claims are moot and the plaintiff has no claim against the defendants based on state law. (Dkt. No. 76.) The Plaintiff argues that he is entitled to summary judgment because there are no genuine issues of material fact as to the allegations he makes against the Defendants. (Dkt. No. 77.)

## Due Process Claims

Broadly construing the Amended Complaint, the Plaintiff alleges that his due process rights were violated by Defendant Glidewell at his disciplinary hearing because she did not record the complete hearing and then later deleted parts of the recording. (Dkt. No. 62.) The Plaintiff alleges his subsequent confinement additionally violated his right to due process. Lastly, the Plaintiff alleges that Defendants Powe and Riley are liable for not fully investigating

his grievance after his conviction and sanction before Defendant Glidewell. (*Id.*; *see also* 77-1 at 5.)

1. **Due Process with Respect to his Discplinary Hearing**

In *Wolff v. McDonnell,* the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

418 U.S. 539, 563-76 (1974). A review of the record reveals that the due process requirements stated in *Wolff* were observed in this case.

Defendant Glidewell is the only Defendant alleged to have involvement with the Plaintiff's disciplinary hearing. (Dkt. No. 62.)   The Plaintiff argues that Defendant Glidewell did not allow the Plaintiff to present evidence at the hearing when she refused to grant him a continuance in violation of the third *Wolff* factor. (Dkt. No. 77-1 at 6.)  The Plaintiff states that he would have presented the prison disciplinary policy regarding his charge. (*Id.*)  The disciplinary report and hearing record specifically refer to the disciplinary policy under which he was charged. (Dkt. No. 76-2.) The Plaintiff was given ten (10) days notice of the hearing. (*Id.*)

At the time of the hearing, the Plaintiff's charge was almost a year old.  There is no evidence that the denial of a continuance infringed on the Plaintiff's right to due process.  The Plaintiff argues that Defendant Glidewell was not impartial in violation of the fifth *Wolff* factor.   There is no evidence beyond the Plaintiff's bare assertion the Defendant Glidewell was not impartial.

As to the Plaintiff's claims that Defendant Glidewell improperly stopped the recording of his hearing and later erased parts of the recording, the Plaintiff did not have a due process right to have a tape recording of his hearing.  *Thompson v. Carrington*, No. 2:06-cv-2114-TLW-RSC, 2007 WL 2212676, at *2 (D.S.C. July 26, 2007) (Order accepting Report and Recommendation stating that prisoner did not have a constitutional right to a recording of his disciplinary hearing). The only record required by *Wolff* is a written statement by the fact finder as to the evidence relied on and reasons for the disciplinary action.  This was provided to the Plaintiff. (Dkt. No. 76-2 at 10-11.) Additionally the only harm that could have resulted was the sanction  the Plaintiff was subjected to until the charge was overturned. As discussed below, the Plaintiff would have been under the sanctions regardless of what happened with the charge that is the subject of this lawsuit.

Assuming *arguendo* that the Plaintiff's right to due process as articulated under *Wolff* was violated, no genuine issue of material facts exists as to whether the Plaintiff suffered "'atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life' that 'conceivably create a liberty interest.'" *Greene v. Cty. of Durham Office of the Sheriff Dep't*, No. 1:14-CV-153, 2016 WL 4507355, at *15 (M.D.N.C. Aug. 26, 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)) (holding that that officers who allegedly lied on charging documents submitted in plaintiff's disciplinary hearing were entitled to summary judgment because the

disciplinary hearing resulted only in disciplinary segregation for thirty days and the removal of other privileges).

In the case at bar, the Plaintiff's conviction did not have any effects on his classification or privileges because he already had many other disciplinary convictions and sanctions. The Plaintiff does not dispute that he has been convicted on numerous other disciplinary infractions while incarcerated. (*See* Dkt. No. 76-4.) The Plaintiff concedes that the sanctions from these infractions run consecutively (Dkt. No. 88.) The Plaintiff states that each disciplinary sanction must be completed before the next sanction begins. (*Id.*) A review of the many sanctions received by the Plaintiff in 2012 through 2013 alone show that the Plaintiff would have been in disciplinary detention and lost canteen, telephone, and visitation privileges for the time at issue in this lawsuit regardless of the sanctions he received in this case. From November 6, 2012 through September 9, 2013, the Plaintiff was convicted of nine (9) other disciplinary charges resulting in cumulative sanctions of 1,550 days of disciplinary detention, loss of canteen for 2,880 days, loss of telephone for 2,880 days, and loss of visitation for 3,430 days. (Dkt. 76-4.) Therefore the Plaintiff did not suffer any hardship as a result of the charge and sanction in question.

2. **Due Process with Respect to his Resulting Confinement**

The Plaintiff's allegations that his classification and confinement between January 23, 2013, when he was charged with Offense 832, and September 9, 2014, when his conviction was overturned, violated his due process rights afforded under the Fourteenth Amendment are not actionable as a matter of law. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). Although prisoners are afforded

8

some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Within the Fourth Circuit, courts have held that the following sanctions do not constitute "atypical and significant hardship": disciplinary detention, segregated confinement, the loss of the inmate's prison job, the denial of permission to participate in work release, and the loss of canteen, visitation, and phone privileges. *See Kitchen v. Upshaw*, 286 F.3d 179, 189 (4th Cir.2002); *Williams v. Farrior*, 334 F.Supp.2d 898, 904 & n. 9 (E.D.Va.2004). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.1991); *see also Beverati*, 120 F.3d at 502 (holding that a six-month term in segregation did not impose an atypical hardship where the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Consequently, no constitutionally protected liberty interest is implicated in Plaintiff's placement in disciplinary detention, or in Plaintiff's loss of canteen, telephone, and visitation privileges. *See Beverati*, 120 F.3d at 502; *Reffitt v. Nixon*, 917 F.Supp. 409, 413 (E.D.Va.1996).    Therefore,

with respect to the Plaintiff's due process claims regarding his confinement, the court recommends that Defendants' Motion for Summary Judgment be granted.

3. **Due Process with Respect to Grievance Process**

The Plaintiff alleges that Defendants Powe and Riley are liable for not fully investigating his grievance after his conviction and sanction before Defendant Glidewell. (*Id.*; *see also* 77-1 at 5.) Such claims do not amount to a due process violation. *See Keeler v. Pea,* 782 F.Supp. 42 (D.S.C.1992) (finding that § 1983 "does not provide any relief against prison rules violations assuming, *arguendo,* that such a violation occurred"); *see also Pelzer v. SCDC*, No 5:11-30-MBS-KDW, 2012 WL 761703, at *4 (D.S.C. Feb. 15, 2012)*, report and recommendation adopted*, No. 5:11-0030-MBS, 2012 WL 761691 (D.S.C. Mar. 8, 2012) (holding that Plaintiff's allegations that Defendant violated his due process and procedural due process rights by failing to investigate his grievance and failing to comply with SCDC policy in taking action on his grievance did not state a claim pursuant to *Keeler v. Pea*).

4. **Other Claims**

To the extent the Plaintiff brings any claims against Defendant Riley in his supervisory capacity or through vicarious liability, the Defendant Riley is entitled to summary judgement. The doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory").

However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th

Cir. 1984). In such a case, liability "is not premised on respondeat superior, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Id.* at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.* (citations omitted).

Assuming *arguendo* that one of Defendant Riley's subordinates violated the Plaintiff's rights, there is no evidence in the record that Defendant Riley had any knowledge of such acts. Additionally there is no evidence in the record of deliberate indifference or acquiescence. Therefore this court recommends that the Defendants' Motion for Summary Judgment be granted.

5. **Qualified Immunity**

Because there is no evidence that the Defendants infringed on the Plaintiff's right to due process, they are entitled to qualified immunity. "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified

immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. *Id.* (quoting *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011)).  To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Id.*  As discussed *supra,* in viewing the evidence in the light most favorable to the Plaintiff, the Defendants did not infringe on his right to due process. Therefore, the Defendants are entitled to qualified immunity.

## <u>Conclusion</u>

Wherefore, in viewing the evidence in the light most favorable to the non-moving party, this court **RECOMMENDS** that the Defendants' Motion for Summary Judgment (Dkt. No. 76) be **GRANTED** and the Plaintiff's Motion for Summary Judgment (Dkt. No. 77) be **DENIED**.

IT IS SO RECOMMENDED.

January 17, 2017

Charleston, South Carolina

_____

MARY GORDON BAKER

UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).